<u>CORRECTED FINDINGS OF FACT AND DECISION</u>

| | |
|---|---|
| Case No. | 211664 |
| Student's Name: | ███████ (the "Student") |
| Date of Birth: | ███████ |
| District: | New York City Board of Education |
| Hearing Requested by: | Steven J. Alizio, Esq., of The Law Office of Steven Alizio, on behalf of ███████ (the "Parent") and the Student |
| Record Close Date: | January 29, 2022 |
| Hearing Officer: | Randy Glasser, Esq. |

On August 16, 2021, Steven J. Alizio, Esq., of The Law Office of Steven Alizio, filed a Due Process Complaint "DPC") on behalf of the Parent, and the Student, pursuant to the Individuals with Disabilities Education Act (the "IDEA") (20 U.S.C. §1415(f)) and Section 4404(1) of the New York State Education Law, and their respective corresponding regulations, against the New York City Board of Education (Parent Ex. "A"). This Hearing Officer was appointed as the Impartial Hearing Officer ("IHO") on November 16, 2021, after the prior Impartial Hearing Officer's appointment was rescinded. The District was represented by District Representative, Geraldine Dorsaint, and the Parent and Student by Justin B. Shane, Esq. of The Law Office of Steven Alizio. A prehearing conference ("PHC") and pendency hearing were scheduled for November 23, 2021.  However at the Prehearing Conference, Parent's attorney stated that since the Hearing was being held so quickly after being assigned to this IHO, he was withdrawing the request for a pendency order (Tr. 14).  The Hearing was held on December 14, 2022. At the Hearing the parties were directed and agreed upon the due date for their written closings being January 18, 2022. On January 18, 2022, this IHO received the Parent's Closing Brief and an email from Ms. Dorsaint stating that the District would not be submitting a closing statement on its behalf (see IHO Ex. "I" and "II" respectively).

The District submitted one document into evidence, the Student's current Individualized Education Program ("IEP"), which was pursuant to this IHO's direction (Tr. 35-36). However, after making an opening statement and conceding that it did not provide a free appropriate public education ("FAPE") to this Student for the past two (2) school years, (2020/2021 and 2021/2022), the District did not put on a direct case or present rebuttal witnesses (Tr. 38-39, 95). Moreover, in the District's opening statement they claimed in part for the first time that the Parent's claims for

the 2017/2018 through 2019/2020 school years were barred by the applicable two-year statute of

limitations (Tr. 37-38). The Parent submitted into evidence Parent Exhibits "A" through "M", and

put on a direct case which included the Affidavits of the Parent, Dr. Jennifer Oratio, and Hanna

Chang (see Parent Ex. "K", "L" and "M" respectively).

    Lists of the documentary evidence submitted and appearances for this matter are appended

to this Order. The compliance date for this matter has been extended to February 28, 2022 (IHO

Ex. "III").

## **BACKGROUND AND POSITIONS OF THE PARTIES**

    The Student is ███████ years old, diagnosed with ████████████████, and

classified as a student with █████ (DOE Ex. "1", Parent Ex. "E" at p. 1, 9, "K" at ¶3)). As

explained in the Neuropsychological Evaluation of the Student dated January 12, 2021:

> At this time, [the Student] also continues to qualify for a DSM-5
> diagnosis of ████████████████. His presentation meets a
> Level 3 (requiring very substantial support) with both his social
> communication skills (e.g., severe deficits in verbal and nonverbal
> communication, which also hampers the quality and amount of
> social interactions) and with regard to restricted, repetitive behavior
> (e.g., inflexibility of behavior, extreme difficulty coping with
> change, or other restricted/repetitive behaviors markedly interfere
> with functioning in all spheres; great distress/difficulty changing
> focus or action). Specifiers of With accompanying intellectual
> impairment and With accompanying language impairment are also
> warranted given his current cognitive and adaptive profiles.

(Parent Ex. "E" at p. 9).

    The Student's IEP for the 2021/2022 school year recommends the following twelve-month

program and services: special 6:1+1 class for math, ten (10) times per week, one (1) period per

session, special 6:1+1 class for ELA, ten (10) times per week, one (1) period per session, special

6:1+1 class for Social Studies, three (3) times per week, one (1) period per session, special 6:1+1

class for Sciences, three (3) times per week, one (1) period per session, special 6:1+1 class for

Social Studies, four (4) times per week, one (1) period per session, special 6:1+1 class for Sciences,

four (4) times per week, one (1) period per session, individual occupational therapy two (2) times

per week, thirty (30) minutes per session, individual physical therapy, two (2) times per week,

thirty (30) minutes per session, individual speech language therapy, three (3) times per week, thirty

(30) minutes per session, parent counseling and training, monthly, up to sixty (60) minutes per

session, and an individual dynamic display speech generating device (SGD), daily (DOE Ex. "I").

The DPC alleges the District denied the Student a FAPE for the 2017/2018 through

2021/2022 school years, and the equities favor the Parent, and the following Proposed Resolution:

> 1. An interim order requiring the DOE to immediately provide or
> otherwise fund an appropriate pendency program and placement[1];
> 2. A finding that [the Student] was denied a FAPE for the 2017-
> 2018, 2018-2019, 2019-2020, 2020-2021, 2021-2022 school years;
> 3. A finding that the DOE failed to thoroughly assess [the Student]
> in all areas of his suspected disability;
> 4. A final order requiring the DOE to:
>> a. Provide prospective tuition funding to an appropriate
>> independent or non-public school placement.3 20 U.S.C.
>> §1415(i)(2)(C)(iii), §1439(a)(1);
>> b. Fund fifteen (15) hours per week of 1:1 ABA instruction
>> to be provided in the home—outside of the school day and
>> in addition to the program described in paragraph 4(a),
>> supra—under the direct supervision of a BCBA for three (3)
>> hours per week; to be conducted by a qualified independent
>> provider(s) of Parent's choosing at a reasonable market
>> rate(s);
>> c. Fund a minimum of one hour-long session per month of
>> parent counseling and training by a qualified independent

---

[1] As aforementioned at the Prehearing conference the Parent's Attorney stated their request for a Pendency Order was withdrawn.

provider(s) of Parent's choosing at a reasonable market rate(s);

d. Fund an assistive technology evaluation to be conducted by a qualified independent evaluator of Parent's choosing at a reasonable market rate;

e.    Provide    appropriate    round-trip    special transportation/suitable    transportation    between    [the Student's] home and the program/placement referred to in subparagraph "a" above—as mandated by both New York State and Federal Law—and should the DOE fail to provide [the Student] with the aforementioned, provide funding to Parent for transportation costs; and

f. Fund compensatory services to be provided by a qualified independent provider(s) of Parent's choosing at a reasonable market rate(s); the amount and type of compensatory services to be determined according to proof; such services shall be scheduled according to Parent's convenience and good until used; and

5. Any additional relief such as the IHO determines is appropriate. 20 U.S.C. § 1415(i)(2)(C)(iii), § 1439(a)(1).[4]

[4] Parent maintains her right to seek costs and fees in federal court should she be a prevailing party in this matter. 20 U.S.C. § 1415(i)(3)(B)(C).

(*Id.* at pp. 13-14)

As aforementioned in the District's Opening Statement they claimed the Parent's claims for the 2017/2018 through 2019/2020 school years were barred by the Statute of Limitations (see: *Infra*). The District continued to explain regarding the Statute of Limitations:

And the District would oppose that those school years be included as the Parent has had an opportunity to file a due process complaint each and every single year, and that their safeguard procedures have been provided at every single IEP meeting, and they were advised of their due process rights and failed to do so. And it would be unreasonable, at this juncture, to have the Parent seek to toll the statute of limitation to include years that fall outside of the statute limitations.

(Tr. 38).

The Student's eligibility and classification are not at issue in this case.

## DECISION

### A. The Provision of a FAPE:

The IDEA provides that children with disabilities are entitled to a FAPE (*20 U.S.C. § 1400 (d)(1)(A)*). A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensively written IEP (*Id., 20 U.S.C. §1414(d); 34 C.F.R. § 300.17*). A school district has offered a student a FAPE when (a) the board of education complies with the procedural requirements set forth in the IDEA; and (b) the IEP is developed through, the IDEA's procedures, and is (c) reasonably calculated to enable the student to receive educational benefits. *Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982). In order to meet its substantive FAPE obligations, a district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas County Sch. Dist., RE-1,* 137 S. Ct. 988 (2017).

Decisions of impartial hearing officers must be on substantive grounds based on a determination of whether the student received a FAPE (*8 NYCRR § 200.5(j)(4)(i)*),  except:

> In matters alleging a procedural violation, an impartial hearing officer may find that a student did not receive a free appropriate public education <u>only if the procedural inadequacies impeded the student's right to a free appropriate public education, significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parent's child, or caused a deprivation of educational benefits</u>. Nothing in this paragraph shall be construed to

preclude an impartial hearing officer from ordering a school district
to comply with procedural requirements under this Part and Part 201
of this Title 8 NYCRR § 200.5(j)(4)(ii).

*Id.* (Emphasis added.)

In the instant matter, the DOE conceded that it did not provide the Student with a FAPE

for the 2020/2021 and 2021/2022 school year (see *Infra*).

**B. Statute of Limitations:**

**1. Introduction:** The IDEA provides that a claim accrues on the date that a party knew or

should have known of the alleged action that forms the basis of the complaint and requires that,

unless a state establishes a different limitations period, the party must request a due process hearing

within two years of that date *(20 U.S.C. § 1415(f)(3)(C); see also 20 U.S.C. § 1415(b)(6)(B); Educ.

Law § 4404(1)(a); 34 CFR 300.507(a)(2), 300.511(e); 8 NYCRR 200.5(j)(1)(i); Somoza v. New

York City Dep't of Educ.,* 538 F.3d 106, 114-15 & n.8 (2d Cir. 2008); *M.D. v. Southington Bd. of

Educ., 3*34 F.3d 217, 221-22 (2d Cir. 2003)). Because an IDEA claim accrues when the parent

knew or should have known about the claim, "determining whether a particular claim is time barred

is necessarily a fact-specific inquiry" (*K.H. v. New York City Dep't of Educ*., 2014 WL 3866430,

at *16 (E.D.N.Y. Aug. 6, 2014); see *K.C. v. Chappaqua Cent. Sch. Dist*., 2018 WL 4757965, at

*14 (S.D.N.Y. Sept. 30, 2018) (collecting cases representing different factual scenarios for when

a parent may be found to have known or have had reason to know a student was denied a FAPE)).

Two exceptions to the statute of limitations may apply to the timelines for requesting

impartial hearings. The first exception applies if a parent was prevented from filing a due process

complaint notice due to the district withholding information from the parent that the district was

required to provide under the IDEA (*20 U.S.C. § 1415(f)(3)(D)(ii); 34 CFR 300.511(f)(2); 8*

*NYCRR 200.5(j)(1)(i)*). A second exception may apply if a parent was prevented from filing a due process complaint notice due to a "specific misrepresentation" by the district that it had resolved the issues forming the basis for the due process complaint notice (*20 U.S.C. § 1415(f)(3)(D); 34 CFR 300.511(f); 8 NYCRR 200.5(j)(1)(i)*). In the Parent's closing statement it argues that the "Parent did not fully understand [the Student's] needs and injuries to [the Student] as a result of the DOE's failure to provide a FAPE during the school years in question until she received and reviewed [the neuropsychologist's] comprehensive neuropsychological evaluation of [the Student] in Mach of 2021. Ex. K at 4." Nonetheless upon review of the Parent's entire Affidavit, including page 4, there is no testimony contained therein containing this statement or substantiating this claim.

The Parent also testified that she does not "recall previously receiving a copy of the procedural safeguards notice from the DOE at any point during [the Student's] educational career. Nor do I recall the DOE ever explaining any of my rights to me" (Parent Ex. "K" at ¶37).

The second exception to the timeline to request an impartial hearing applies "if the parent was prevented from filing a due process complaint notice due to . . . the [district's] withholding of information from the parent that was required . . . to be provided to the parent (*20 U.S.C. § 1415(f)(3)(D); Educ. Law 4404(1)(a); 34 CFR §300.511(f); 8 NYCRR §200.5(j)(1)(i)*). Case law interpreting the "withholding of information" exception to the limitations period has found that the exception almost always applies to the requirement that parents be provided with the written notice of procedural safeguards required under the IDEA (*Board of Educ. of N. Rockland Cent. Sch. Dist.* 2018 WL 3650185, at *3; *R.B. v. Dept. of Educ. of City of New York*, 2011 WL 4375694, at *4, *6 (S.D.N.Y. 2011); see *D.K. v. Abington Sch. Dist.,* 696 F.3d 233, 246 (3d Cir. 2012); *C.H. v.*

*Northwest Ind. Sch. Dist.,* 815 F. Supp. 2d 997, 986 (E.D. Tex. 2011); *Tindell v. Evansville-Vanderburgh Sch. Corp.,* 805 F. Supp. 2d 630, 644-45 (S.D. )Ind. 2011); *El Paso Indep. Sch. Dist. v. Richard R.,* 567 F. Supp. 2d 918, 943-45 (W.D. Tex. 2008); *Evan H. v. Unionville-Chadds Ford Sch. Dist.,* 2008 WL 4791634, at *7 (E.D. Pa. 2008). Such safeguards include the requirement to provide parents with a procedural safeguards notice containing, among other things, information about requesting an impartial hearing (see *20 U.S.C. § 1415(d); 34 CFR §300.504; 8 NYCRR §200.5(f)*). Under the IDEA and federal and State regulations, a district must provide parents with a copy of a procedural safeguards notice annually (*20 U.S.C. § 1415(d)(1)(A); 34 CFR 300.504(a); 8 NYCRR 200.5(f)(3)*). However, if a parent is otherwise aware of his or her procedural due process rights, the district's failure to provide the procedural safeguards notice will not necessarily prevent the parent from requesting an impartial hearing (see *D.K.,* 6s96 F.3d at 246- 47; *R.B.,* 2011 WL 4375694, at *7; *Richard R.,* 567 F. Supp. 2d at 944-45). In the instant matter it is evident that the Parent was "otherwise aware of [her] procedural due process rights" because she filed a Due Process Complaint dated April 14, 2020, resulting in IHO Peyser's Findings of Fact and Decision dated October 6, 2020 (Parent Ex. "D"), ordering the District fund the independent neuropsychological evaluation dated January 12, 2021 (Parent Ex. "E"). Accordingly, this exception does not apply in the instant case.

At first glance, it therefore appears that the accrual date, or the date the Parent knew of the basis of her claims was at the latest, at the beginning of each school year at issue, e.g., July 1, 2017 for the 2017/2018 school year, July 1, 2018 for the 2018/2019 school year, etc. Thus, the Parent was required to serve a Due Process Complaint Notice on the District, no more than two (2) years thereafter, or on the following dates for the school years at issue, July 1, 2019 for the 2017/2018

school year, July 1, 2020, for the 2018/2019 school year,  July 1, 2021 for the 2019/2020 school

year, etc.

      **2.** **Tolling of Statute of Limitations:**  Due to the COVID-19 pandemic ("Pandemic") as

declared by the President of the United States in his March 13, 2021 Proclamation, Governor Andrew

M. Cuomo of New York issued Executive Order No 202.8, which stated:

> In accordance with the directive of the Chief Judge of the State to
> limit court operations to essential matters during the pendency of the
> COVID–19 health crisis, any specific time limit for the
> commencement, filing, or service of any legal action, notice,
> motion, or other process or proceeding, as prescribed by the
> procedural laws of the state, including but not limited to the criminal
> procedure law, the family court act, the civil practice law and rules,
> the court of claims act, the surrogate's court procedure act, and the
> uniform court acts, or by any other statute, local law, ordinance,
> order, rule, or regulation, or part thereof, is hereby tolled from the
> date of this executive order until April 19, 2020.

      Through a series of subsequent executive orders issued every thirty (30) days, the Governor

ultimately extended the tolling period through November 3, 2020 (see, Executive Order [A.

Cuomo] 202.14 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72 (*9 NYCRR*

*§§8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.67, 8.202.72*)).

      Nevertheless, the statute of limitations had already expired for the 2017/2018 school year

before it was tolled by the Governor's Executive Orders, and despite the statute of limitations

being tolled for the 2018/2019 school year, the DPC dated August 16, 2021, was not filed within

the two hundred and forty one (241), days after November 3, 2020, or by June 22, 2021.

Accordingly, at first glance it appears that the claims for the 2017/2018 and 2018/2019 school year

are barred because this case was not commenced within the requisite two-year statute of limitations

period.  Nonetheless, as more fully explained below, these claims are not barred, because the

District waived this Statute of Limitations defense.

**3.** <u>**Waiver of Statute of Limitations Defense/Whether the Statute of Limitations is Timely:**</u>

A statute of limitations defense is timely interposed so long as it is raised at some point during the impartial hearing (see: *M.G. v. New York City Dep't of Educ.*, 15 F. Supp.3d 296, 304 (S.D.N.Y.2014) holding that the limitations defense is "subject to the doctrine of waiver if not raised at the initial administrative hearing" and that where a district does "not raise the statute of limitations at the initial due process hearing, the argument has been waived"). Moreover, in *R.B. v. Dep't of Educ. of the City of New York*, 2011 WL 4375694, at *4 -*6 (S.D.N.Y. Sept. 16, 2011) the court noted that the IDEA "requir(es) parties to raise all issues at the lowest administrative level" and holding that a district had not waived the limitations defense by failing to raise it in a response to the due process complaint notice <u>where the district articulated its position prior to the impartial hearing</u> (see also: *Vultaggio v. Bd. of Educ., Smithtown Cent. Sch. Dist.*, 216 F. Supp. 2d 96, 103 (E.D.N.Y. 2002) which noted that "any argument that could be raised in an administrative setting, should be raised in that setting").) Accordingly, since the District did not raise this defense prior to the administrative hearing, but rather on the day the hearing was held, in its opening statement, such defense was not timely made and therefore waived.

Nonetheless, as more fully explained below, even if not waived, this defense is not applicable and therefore not serve to bar the Parent's requested relief, e.g., compensatory services, independent evaluation and change in Student's program and services.

**C.** <u>**Prospective Tuition Funding for an "appropriate independent" or non-public school placement:**</u>

As aforementioned the Parent is requesting this IHO order the District to provide

prospective funding for an appropriate independent or non-public school placement and:

> If no such placement is available, the DOE should be ordered to fund forty (40) hours per week of 1:1 ABA instruction in conjunction with eight (8) hours per week of BCBA supervision—as well as appropriate types and frequencies of related services, according to proof—during the school day for the 12-month school year; such services should be provided by a qualified independent provider(s) of Parent's choosing at a reasonable market rate(s).

(*see* Parent Ex. "A" at p. 13 at 4(a) and footnote 3, respectively). In this regard, Dr. Oratio testified

in relevant part:

> 9. In my professional opinion—based on my evaluation of [the Student], review of the aforementioned documents, and conversations with [the Student's] mother—I determined that [the Student] requires placement in a full-day, intensive behavior analytic program that follows Applied Behavior Analysis ("ABA") principles with oversight by a Board Certified Behavior Analyst ("BCBA"). These services should be provided on a 12-month, full-time and 1:1 basis by professionals with a high level of training in ABA and experience working with children with ASD. . .  As set forth more fully below, [the Student] has stagnated in his current program, and thus I believe that he requires ABA to build the basic academic, communication, and adaptive skills that will serve as the foundation for future learning. . .
>
> 10. Unfortunately, I understand that Parent has been unable to identify a school with an opening for [the Student] for the 2021-2022 school year that offers the type of full-time, ABA-based program that [the Student] requires. I am also not aware of a program within the DOE that offers such instruction, and thus, I would recommend that an ABA instructor push-in to [the Student's] classroom on a full-time basis and that these services be overseen by a BCBA.  The BCBA should provide one hour of supervision for every five hours that [the Student] is in the classroom. . . [the Student] also requires door-to-door transportation services to and from his school with limited travel time on an air-conditioned minibus.

*     *     *.

12. As a result of being placed in non-ABA classrooms since preschool, [the Student] has not made meaningful progress in numerous domains.  [the Student], for instance, has not been able to move beyond letter identification in reading and writing or counting in math despite the fact that he possessed rudimentary skills in these areas in preschool.  Similarly, [the Student] has made no progress with peer interactions and continues to speak in 1–2-word utterances. [the Student] also continues to struggle with toileting.  Moreover, it is my understanding that he has regressed in his ability to self-regulate and he now displays more hyperactive and oppositional behaviors both at home and in school.

(Parent Ex. "L" at ¶¶9, 10, and 12).  Accordingly, the Parent has submitted sufficient testimony/evidence demonstrating that in order to make meaningful progress in light of his unique circumstances the Student should receive a twelve-month intensive behavior analytic, full time program, which follows ABA principals, where he will receive 1:1 instruction, with one (1) hour of BCBA Supervision for every five (5) hours that the Student is in the classroom. If the DOE determines that such program is only available in a nonpublic school then a deferral shall be made to the Central Based Support Team ("CBST") to make such recommendation.[2]

Nonetheless, the Parent's alternative request to fund forty (40) hours per week of 1:1 ABA push-in instruction with eight (8) hours per week of BCBA supervision if the requested ABA class is not available, is not entirely supported by the record. As seen by other portions of Dr. Oratio's testimony, her recommendations are based upon the Student's school week consisting of thirty (30) hours per week or six (6) hours per day; e.g., Parent Ex. "L" at ¶15(a) states, "Using a

---

[2] It is this IHO's understanding that a nonpublic school program is found by referring this Student to the CBST. As stated in an NYCDOE document entitled , "Other Educational Settings", "If the IEP team or CSE recommends a non-public school placement on your child's IEP, they will seek assistance from the Central Based Support Team (CBST). The CBST is the DOE office that matches students with state-approved non-public schools. A CBST case manager will apply to non-public schools for your child" (https://www.schools.nyc.gov/learning/special-education/school-settings/other-educational-settings, last accessed 1/25/22).

Findings of Fact and Decision                                                14
Case No. 211664

conservative estimate of a six-hour school day, [the Student] should have received 30 hours per week of 1:1 ABA Instruction with six (6) hours [per week] of BCBA supervision". Accordingly, the record supports an award of the requested push-in ABA Instruction, thirty (30) hours per week, (instead of forty (40) hours), and BCBA supervision, six (6) hours per week, (instead of eight (8) hours)

Accordingly, until such time as the District is able to provide an appropriate placement for the Student, as set forth above, the District will be required to provide the thirty (30) hours of push-in ABA Instruction and six (6) hours of BCBA Supervision per week, requested by the Parent.

**D. Related Services:**

**1. At Home ABA Instruction and BCBA Supervision:** As aforementioned, the DPC proposes in part that the Resolution of this matter consist of this IHO ordering, the District "fund fifteen (15) hours per week of 1:1 ABA instruction to be provided in the home-outside of the school day and in addition to the program described in paragraph 4(a)[3], *supra* – under the direct supervision of a BCBA for three (3) hours per week; to be conducted by a qualified independent provider(s) of the Parent's choosing at a reasonable market rate(s)" (Parent Ex. "A" at pp. 13-14). In addition to the testimony quoted above regarding the need for these services, Dr. Oratio testified in relevant part:

> In my professional opinion—based on my evaluation of [the Student], review of the aforementioned documents, and conversations with [the Student's] mother—. . . In addition to this school program, I determined that [the Student] requires a minimum of 15 hours per week of at-home ABA instruction with three hours per week of BCBA supervision.   My opinion that [the Student]

---

[3] Paragraph 4(a) requests the prospective tuition funding to an appropriate independent or non-public school placement discussed above.

requires a full-time ABA-based program is based on the extensive research that documents the benefits of ABA-based instruction for children on the autism spectrum as well as my experience in working in children with needs similar to [the Student].  As set forth more fully below, [the Student] has stagnated in his current program, and thus I believe that he requires ABA to build the basic academic, communication, and adaptive skills that will serve as the foundation for future learning.  [The Student] requires at-home services in addition to a full-time, ABA-based school program in order to generalize skills he learns at school to the home environment and to allow for additional time to build his adaptive and communicative skills.

Unfortunately, I understand that Parent has been unable to identify a school with an opening for [the Student] for the 2021-2022 school year that offers the type of full-time, ABA-based program that [the Student] requires.  I am also not aware of a program within the DOE that offers such instruction, and thus, I would recommend that an ABA instructor push-in to [the Student's] classroom on a full-time basis and that these services be overseen by a BCBA.  The BCBA should provide one hour of supervision for every five hours that [the Student] is in the classroom.  This program should also include 15 hours per week of at-home ABA therapy with three hours per week of BCBA supervision and at least one hour per month of parent counseling and training. . .

(Parent Ex. "L" at ¶¶9, 10). Accordingly, the Parent has submitted sufficient testimony/evidence in support of their request that the Student receive fifteen (15) hours at home of ABA Instruction and three (3) hours at home of BCBA supervision per week.

    2. **Parent Counseling and Training:**  As aforementioned the DPC proposes in part that the Resolution include this IHO's Order for the District to "fund a minimum of one-hour-long session per month of parent counseling and training by a qualified independent provider(s) of Parent's choosing at a reasonable market rate" (Parent Ex. "A" at p. 14). As stated above, Dr. Oratio testified in relevant part that the Student's program should include this requested service and duration (see: *Infra*).

Notably the Student's program for the current school year, already contains parent counseling, one time per month, "up to" sixty (60) minutes per session. Accordingly, the Student's IEP should be revised to provide that the parent counseling and training is sixty (60) minutes per month, and not "up to".

**3.** **Speech Language Therapy:**  The Parent requests the Student receive five (5) thirty-minute sessions per week of speech language therapy (IHO Ex. "I" at p. 1). Dr. Oratio testified as follows about the appropriate amount/duration of speech language services for the Student:

> In addition to the lack of ABA methodology, it is also my professional opinion that the aforementioned IEPs offered ███ an inappropriate and insufficient amount of related services.  It is my understanding that ███ has been mandated to receive three thirty-minute sessions of speech-language therapy and two thirty-minute sessions of occupational therapy and physical therapy per week since he was in preschool.  I do not believe that these mandates were sufficient to address [the Student's]s pervasive deficits in these areas.  For instance, with respect to speech-language therapy, [the Student's] IEPs evidence minimal progress in his functional communication skills since he entered preschool and little to no progress with his ability to interact with his peers.  Despite this clear lack of progress, the DOE did not increase his speech-language mandate.  Similarly, with respect to occupational therapy, [the Student's] goals related to grasping a writing tool are less ambitious in his most recent, November 1, 2021 IEP (maintain tripod grasp for 1-3 minutes) than they were in his turning-5, April 30, 2019 IEP (maintain quad/tri grasp for 6 minutes). The DOE, however, has failed to increase his occupational therapy mandate as well.  As set forth in my evaluative report, I believe that [the Student's] intensive needs in each of these areas require that he receive daily, intensive speech-language therapy and at least three sessions per week of occupational therapy and physical therapy to address his needs in these areas.

(Parent Ex. "L" at ¶13). While in Dr. Oratio's neuropsychological evaluation of the Student she recommended in relevant part:

> [The Student] should receive daily, intensive speech-language
> therapy sessions to address the pervasive and global delays he
> exhibits in language and social communication described in depth
> throughout this report. A PROMPT approach should be folded into
> his program to address and remediate the severe speech production
> and articulation problems that he exhibits.

(Parent Ex. "E" at p. 10). By stating "daily" it appears that Dr. Oratio is recommending the Student

receive one session of speech language therapy per week, or five (5) days per week. As

aforementioned, the Student's IEP provides the Student currently receives three (3), thirty (30)

minute sessions of speech language therapy per week. Since the Parent has substantiated this claim,

it is appropriate for the Student to receive five (5), thirty (30) minute sessions per week of speech

language services, instead of the three (3), thirty (30) minute sessions currently mandated on his

IEP.

   **4. <u>Occupational  and Physical Therapy:</u>**  The Parent requests the Student receive three

(3) thirty-minute sessions per week for occupational therapy and physical therapy (IHO Ex. "I" at

p. 1). Dr. Oratio testified as follows about the appropriate amount/duration of occupational therapy

services for the Student:

   While Dr. Oratio's neuropsychological evaluation recommends in relevant part:

> Occupational and physical therapy sessions should also resume,
> each at a minimum frequency of 3 sessions per week, in order to
> further strengthen his core strength and muscle tone, balance, motor
> coordination, and graphomotor skills, address his sensory needs, and
> improve upon adaptive skills. Moreover, given the halting of these
> therapies since February 2020, consideration of daily sessions
> should be made, including those serving as compensatory services.

(Parent Ex. "E" at p. 10). As aforementioned, the Student's IEP provides the Student currently

receives two (2), thirty minute sessions of occupational therapy and physical therapy per week.

Since the Parent has substantiated this claim, the Student should be receiving three (3) thirty minute sessions of occupational therapy and physical therapy per week, instead of the (2) thirty (30) minute sessions currently mandated on his IEP.

**E. Independent Educational Evaluation ("IEE"):**

An IEE is "an individual evaluation of a student with a disability or a student thought to have a disability, conducted by a qualified examiner who is not employed by the public agency responsible for the education of the student." *8 NYCRR § 200.1(z).* "If the parent disagrees with an evaluation obtained by the school district, the parent has a right to obtain an independent educational evaluation at public expense." *8 NYCRR § 200.5(g)(1).* In this regard, the Second Circuit Court of Appeals has recently found that, if a district and a parent agree that a student should be evaluated before the required triennial evaluation "the parent must disagree with any given evaluation before the child's next regularly scheduled evaluation occurs" or "[o]therwise, the parent's disagreement will be rendered irrelevant by the subsequent evaluation" (*D.S. v. Trumbull Bd. of Educ.,* 975 F.3d 152, 170 (2d Cir. 2020)).

"In order for an IEE to be provided at public expense, State and federal regulations only require that 'the parent disagrees with an evaluation obtained by the public agency; the regulations do not speak to how a parent must manifest this disagreement to the district". *App. No. 19-094 (2019) citing 34 CFR §300.502(b)(1); 8 NYCRR §200.5(g); see Genn v. New Haven Bd. of Educ., 219 F. Supp.3d 296, 317* (D. Conn. 2016) (a parent does not have to express disagreement "in a formalistic manner . . . to be found to have disagreed in substance with [an] assessment"). Thus, a parent need not "announce in a formalistic manner, 'I, Parent, disagree with this assessment!' to be found to have disagreed in substance with the assessment." *Id.*

When an IEE at public expense is requested by the parent, "the school district must, without unnecessary delay, either ensure an independent educational evaluation is provided at public expense or file a due process complaint notice to request a hearing to show that its evaluation is appropriate or that the evaluation obtained by the parent does not meet the school district criteria" *8 NYCRR § 200.5(g)(1)(iv).*

The Parent's Closing Statement argues in part, because the District failed to sustain its burden to defend against the Parent's allegation that because the District failed to fulfill its responsibility to fully evaluate the Student in all areas of his suspected disability, ignored the Parent's request for an assistive technology evaluation at the CSE meeting held on February 23, 2021, and the equities favor the Parent, "the obvious remedy . . . is to award Parent funding for an independent AT evaluation" (IHO Ex. "I" at pp. 25-27). Notably, the parties recognize the Student's need for an assistive technology device as seen by the provision of an SGD pursuant to the Student's current IEP S(see *Infra*). However, there is no mention in the DPC, closing statement, the Parent's testimony, and/or the evidence submitted in this case, of the Parent disagreeing with a specific evaluation obtained by the District. Therefore, because the Parent did not express any disagreement with an evaluation conducted by the District, the Parent is not entitled to an IEE at public expense (see *Trumbull*, 975 F.3d at 163 (2d Cir. 2020) ("a parent's right to an IEE at public expense is triggered when the parent 'disagrees with an evaluation obtained by the public agency'"); *G.J. v. Muscogee Cty. Sch. Dist.*, 668 F.3d 1258, 1266 (11th Cir. 2012) (upholding a district court that correctly determined that the statutory provisions for a publicly funded independent educational evaluation never "kicked in" because no reevaluation ever occurred); *P.P. ex rel.*

*Michael P. v. W. Chester Area Sch. Dist.,* 585 F.3d 727, 740 (3d Cir. 2009) (holding that because the parents were not challenging a district evaluation, the district was not responsible for reimbursement).

Nonetheless, because the District failed to address the Parent's request for the District to conduct an Assistive Technology evaluation, and the fact that the CSE has recognized the Student's need for an Assistive Technology device, e.g., SGD, in order to benefit from his special education program and services, it is appropriate for the District to conduct the requested assistive technology evaluation of the Student.

**F. Transportation:**

As aforementioned the Parent requests DOE funding of "appropriate round-trip transportation/suitable transportation" between the Student's home and the Student's nonpublic school placement, and in the event the DOE fails to provide the Student with such transportation the DOE be obligated to fund the Parent for such transportation and costs (see: *Infra,* Parent Ex. "A"). As explained by the SRO in *App. No. 18-115* (2018):

> . . . under a more traditional application of the Burlington/Carter framework for tuition reimbursement, an order for tuition reimbursement may very likely have included the costs of the transportation sought by the parent (see Union Sch. Dist. v. Smith, 15 F.3d 1519, 1528 [9th Cir 1994] [finding "that the language and spirit of the IDEA encompass reimbursement for reasonable transportation and lodging expenses . . . as related services"]; see also N.E. Cent. Sch. Dist. v. Sobol, 79 N.Y.2d 598, 608 [1992] [finding that, since a FAPE included related services such as transportation, an order of reimbursement for transportation was an appropriate remedy for a denial of a FAPE]).

*Id.*

The Student's IEP for the current, 2021/2022 school year dated November 1, 2021, states in relevant part under the section entitled "Special Transportation" and other places in the IEP; " Student needs special transportation accommodations/services as follows: Transportation from the closest safe curb location to school"; "Reason(s) why the student needs special transportation service and/or accommodations: Due to [the Student's] impairment in the ability to understand and safely respond to situations and interactions that may arise while traveling without a parent, guardian, or family member he needs special transportation service and/or accommodations" (DOE Ex. "1").

Moreover, Dr. Oratio testified in relevant part; "█████ also requires door-to-door transportation services to and from his school with limited travel time on an air-conditioned minibus" (Parent Ex. "L" at ¶10). However, Dr. Oratio does not provide the basis for her conclusion that the bus must be air conditioned with limited travel time.  Nonetheless, both parties appear to agree the Student needs special transportation in order to access his placement. Accordingly, this IHO finds the DOE is obligated to provide the requested roundtrip special transportation, as recommended on his IEP for the current school year, "from the closest safe curb location to school" to either the appropriate nonpublic school recommended by the CBST or the program where the Student is receiving the thirty (30) hours of ABA Instruction and three (3) hours of BCBA Supervision, per week, as more fully explained herein.

**G. Compensatory Services:**

**1. Introduction:** In the Second Circuit, it is established that the IDEA allows a Hearing Officer to fashion an appropriate remedy, and therefore courts have held compensatory education

is an available option under the IDEA to make up for denial of a FAPE. *P. v. Newington*, 546 F.3d

111 (2d Cir. 2008).

     Ordering compensatory education is not automatic or a matter of *quid pro quo*, where a

student gets one hour for every hour missed of compensatory time. Accordingly, an order of

compensatory education is an equitable remedy available to a hearing officer or judge. Rather than

being awarded pursuant to a formula, the ultimate award must be fact-specific and, to accomplish

IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational

benefits that would have accrued from the special education services the school district should

have supplied in the first place. *Reid v. District of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005)

(*Reid* was cited by the second circuit in *Newington*, in reaching its conclusion that compensatory

education is an option. *Newington* at 123). Notably, *Reid*, *supra,* emphasizes that compensatory

services are equitable relief; they are not a contractual remedy. *Reid* at 123.

     There are primarily two competing approaches utilized in fashioning a compensatory

education award, namely the "quantitative" approach authored by the Third Circuit[4], and the

"qualitative approach relied upon by the Sixth and D.C. Circuits[5]. Although compensatory is a

form of equitable relief, at times courts have used a quantitative method to calculate the amount,

of services missed so that the services can be made up through compensatory education. *M.C. on*

*behalf of J.C. v. Cent. Reg'l Sch. Dist.,* 81 F.3d 389 (3d Cir. 1996); *Manchester Sch. Dist. v.*

---

[4] *See, e.g., M.C. v. Cent. Reg'l Sch. Dist.,* 81 F.3d 389 (3d Cir. 1996) holding that when a school district knows or should know that a disabled child's program is deficient yet fails to correct it, the child is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the program.  *See also: Manchester Sch. Dist. V. Christopher B.,* 807 F. Supp. 860 (D.N.H. 1992).
[5] *See, e.g., Reid v. Dist. of Columbia,* 401 F.3d 516, (D.C. Cir. 2005) (adopting a flexible, fact-specific approach in which the ultimate award is reasonably calculated to provide the educational benefits that likely would have occurred from special education services that the school district should have supplied in the first place).

*Christopher B.,* 807 F. Supp. 860 (D.N.H. 1992). However, neither the Second Circuit[6] nor the New York courts[7] have taken a position on a preferred approach. Accordingly, Hearing Officers have discretion as to which approach to apply.

No matter which approach, when determining the appropriate equitable remedy for compensatory services, the IHO may go back in time for many years. Thus, in *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601 (3rd Cir. 2015), the court held that equitable relief could go back for many years in cases of compensatory education because Moreover, the IDEA's two year "statute of limitations does not apply to limit the permissible periods of compensatory educational awards." *Id* at 610. Among the lower court cases cited by *G.L.* to support this proposition was the New York case of *K.H. v. New York City Dep't. of Educ.*, No. 12-CV-1680, 63 IDELR 295 (E.D.N.Y. 2014).

Moreover, when a school district deprives a child with a disability of a FAPE in violation of the IDEA a court or hearing officer fashioning appropriate relief may order compensatory education (*20 U.S.C. 1415(i)(2)(C)(iii); 34 C.F.R. 300.516(c)(3); Sch. Com. of Burlington v. Dep't. of Educ.,* 41 U.S. 359, (1985). Generally, said denial must be more than *de minimis Catalan v. Dist. of Columbia,* 478 F.Supp.2d 73, 75 (D.D.C. 2007) (court found no evidence that the handful of missed speech therapy sessions added up to a denial of FAPE) *quoting Houston Indep.*

---

[6] *See, L.O. v. New York City Dep't. of Educ.,* 822 F.3d 95 (2d Cir. 2016) (remanding to the district court to determine whether the student is entitled to relief by "'leav[ing] the mechanics of structuring the compensatory education award to the [D]istrict [C]ourt's sound discretion'"); *Doe v. East Lyme Board of Educ.,* 700 F.3d 440 (2d Cir. 2015 (remaining to the District court to decide whether compensatory education should be limited to the kinds of services specified in the student' contested IEP or encompass analogous educational services appropriate to the student's current needs).

[7] *See, e.g., Student X. v. New York City Dep't. of Educ.,* 51 IDELR 122 (E.D.N.Y. 2008) (noting that the Second Circuit has not adopted a test for determining how to calculate an award of compensatory education but awarding hour-for-hour).

*Sch. Dist. v. Bobby R.,* 200 F.3d 341, 348-349 (5th Cir. 2000), *cert. denied,* 531 U.S. 815 (2000).

As explained by the Court in *M.C.*:

> a school district that knows or should know that a child has an inappropriate IEP or is not receiving more than a *de minimis* educational benefit must correct the situation. If it fails to do so, a disabled child is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem. We believe that this formula harmonizes the interests of the child, who is entitled to a free appropriate education under IDEA, with those of the school district, to whom special education and compensatory education is quite costly.

*Id.* at 397.

**2. ABA Instruction and BCBA Supervision:** As aforementioned, in the instant matter the Parent requests compensatory services comprised in part of 9,315 hours of ABA Instruction and 1,863 hours of BCBA Supervision (see:*infra*). In this regard, Dr. Oratio testified in part:

> In addition to the school program and at-home services outlined above, [the Student] clearly requires compensatory services in the form of both ABA therapy and related services to address the DOE's failure to offer an appropriate special education program since preschool. As this is a critical time in [the Student's] development and it will likely take more instructional time to address the deficits he has developed than it would have taken had he received appropriate instruction and services during the school years in question, I believe [the Student] requires, at an absolute minimum, services in an amount equal to the time that he should have received during the school years at issue had the DOE offered him an appropriate program. I believe that these hours should be awarded without an expiration to allow [the Student] to utilize the hours during breaks in the school year and weekends until the hours are fully utilized. Specifically, I believe that [the Student] requires compensatory services in the following amounts:
>
> a. [The Student] should have received a full-time, in-school, 12-month ABA program since he first entered preschool (i.e., the

2017-2018 school year).  Using a conservative estimate of a six-hour school day, [the Student] should have received 30 hours per week of 1:1 ABA instruction with six hours of BCBA supervision (using the recommendation of the Behavior Analyst Certification Board of one hour of supervision for every five hours of ABA instruction) during each of the 12-month (i.e., 46 week) school years from and including the 2017-2018 school year to date.  As set forth above, I also believe that [the Student] required a minimum of an additional 15 hours per week of at-home ABA instruction with three hours per week of BCBA instruction during the aforementioned period of time.  Thus, I believe that [the Student] requires a total of 45 hours of direct 1:1 ABA instruction and nine hours of BCBA supervision for each week during his educational career in which he has not received ABA instruction.  As [the Student] has not received such instruction for any 46-week school year dating back to the 12-month, 2017-2018 school year including the 19 weeks that have elapsed during the 12-month 2021-2022 school year, this would amount to—currently—9,135 hours of ABA instruction and 1,827 hours of BCBA supervision.

\*          \*          \*

d.  To be clear, I believe that the recommendations in subparagraphs "a" through "c" above are based on what [the Student] should be compensated for to date.  To the extent that he does not receive the type of programs and services recommended in Paragraph 10 and 13 above going forward, I believe he should receive even more compensatory services based on the same analysis used in subparagraphs "a" through "c."

*Id.* at ¶15.

Dr. Oratio also provided the following additional testimony and explanation as to the 9,135

hours of ABA she was recommending:

So that recommendation of ABA is based upon the number of hours that I believe would have been appropriate for him to receive since he started formal schooling. He requires an intensive, fulltime, one-to-one, data-driven, research-based ABA program that also includes hours within the home and community settings, including on

> weekends, in order for him to make appropriate progress. So he was
> not receiving this. He has not been receiving this. And he has
> significant delays in many different areas. And based on his severe
> level of autism spectrum disorder and accompanying behaviors and
> delays, this is what he requires.

(Tr. 84-85). When asked what if any changes Dr. Oratio anticipates as a result of the provision of

these compensatory services, she replied:

> Oh, I anticipate that there will be significant gains that are made with
> regard to his language, language processing, comprehension,
> expressive ability, functional communication, language pragmatics,
> social skills, and adaptive skills, attention and focus, behavior,
> reduced anxiety. So I think in all of those areas, ABA appropriate
> program like I was talking about, would address all of those.

(Tr. 86).

Similarly, Hannah Chang, M.S. Ed., BCBA, LBA testified:

> Further, I believe that [the Student] requires a significant amount of
> compensatory ABA instruction (with BCBA supervision) to make-
> up for the DOE's failure to offer him such instruction since he
> entered pre-school. In particular, I believe that [the Student] should
> have received the type of full time, 1:1 ABA program with BCBA
> supervision as described above since he entered pre-school at the
> start of the 12-month 2017-2018 school year. I also believe that he
> should have received 15 hours per week of at-home ABA instruction
> with three hours per week of BCBA supervision since he entered
> preschool. To compensate for the DOE's failure to offer [the
> Student] an appropriate program, [the Student] should receive a
> minimum of one hour of services for every hour of school in which
> he was not offered ABA during this time period. I believe this level
> of support is necessary given that he is at a critical stage of
> development and it will likely take more instructional time to
> address deficits and bad habits he has developed than it would have
> taken had he been provided with appropriate instruction during the
> school years in question. Using a conservative estimate of 30 hours
> per week of instructional time in a full-time school program, which
> would require six hours per week of BCBA supervision per BACB
> guidelines, and coupling that with 15 hours per week of at-home

> ABA instruction with three hours per week of BCBA supervision, I believe that [the Student] should receive compensatory services in the amount of 45 hours per week of ABA instruction and nine hours per week of BCBA supervision for each week that he has attended school during the years in question and has not received such instruction.

Parent Ex. "M" at ¶10. However, through cross-examination the District established that Ms. Chang's recommendations were not based upon her speaking with anyone at the Student's school, (including but not limited to his teachers), or his providers, observing and/or meeting the Student, observing/visiting the Student's placement, or reviewing progress notes, but rather on her review of the Neuropsychological Evaluation by Dr. Oratio, the Student's latest IEP, and a telephone conversation with the Parent (Tr. 51-52, 54, 55, 56, 58, 72-74). Accordingly, this IHO does not assign very much weight or credibility to Ms. Chang's testimony. Nevertheless, as more fully explained below the Student is entitled to Compensatory services consisting of ABA Instruction and BCBA Supervision.

In the instant matter the Parent provided the following testimony demonstrating how it was apparent the DOE knew the Student's program was inappropriate and/or that he was not receiving more than a *de minimis* education benefit, at several points during the 2017/2018 through 2021/2022 school years:

1. **2017/2018 School Year**:

   - The Student "struggled" in his 6:1+3 class at the ▮▮▮▮▮▮▮▮ ▮▮ School during his first year of preschool, because "he failed to demonstrate growth in activities of daily living such as toilet training. His teachers reported that his attention deficits were significant and precluded him from taking part in group activities. [The] Student also showed no progress in his writing and drawing skills," (Parent Ex. "K" at ¶¶ 4, 5, 6).

- After the CSE failed to change the Student's placement at the meeting held on February 5, 2018, the Student, "continued to struggle throughout the 2017-2018 school year. [The Student] for instance, continued to struggle with toilet training. [The Student also made limited, if any, progress with his language, ability and willingness to interact with his peers and ability to follow directions. [The Student] also continued to struggle with attention, particularly in group settings  (*Id.* at ¶¶ 7,8).

## 2. 2018/2019 School Year:

- [The Student] continued to struggle during the 2018-2019 school year [during preschool at ▮▮▮▮▮▮▮▮ [The Student], for instance, failed to make progress with his language skills and made minimal, if any, progress with his early academic skills such as counting and identifying letters.  He also continued to struggle with toilet training and his ability to self-regulate and focus on instruction and/or tasks.
- As a result of the inappropriate special education program offered to [the Student] for the 2018-2019 school year, [the Student] failed to make meaningful academic, social, and emotional progress. (*Id.* at ¶¶9, 12, 13).

## 3. 2019/2020 School Year:

- The Student attended ▮▮ for Kindergarten (*Id.* at ¶16).
- Once the DOE transitioned to remote learning upon the onset of the COVID-19 pandemic, [the Student] did not receive OT or PT for the remainder of the 2019-2020 school year. Additionally, due to his disability, [the Student] had significant difficulties attending to remote learning.  The DOE, however, failed to reconvene an IEP meeting to create an IEP that addresses the unique demands of remote learning.

- As a result of the foregoing, [the Student] failed to make meaningful social, emotional, or academic progress during the 2019-2020 school year.  In fact, [the Student] regressed emotionally and behaviorally, and demonstrated more hyperactive and oppositional behaviors, as well as increased sensory dysfunction and emotional dysregulation (*Id.* at ¶¶20, 21).

Corrected Findings of Fact and Decision                                        29
Case No. 211664

---

### 4. <u>2020/2021 School Year (First Grade – P 4):</u>

- The Student attended ■ for First Grade (*Id.* at ¶22).
- As a result of the foregoing, [the Student] failed to make meaningful progress during the 2020-2021 school year and even regressed in some areas. [the Student], for instance, displayed more hyperactive and oppositional behaviors over the course of the year. He refused to engage with instruction completely on days when instruction was delivered remotely. I also did not observe progress with his academic skills or with his ability to interact with his peers (*Id.* at ¶31).

### 5. <u>2021/2022 School Year:</u>

- The Student attends ■ for Second Grade year (*Id.* at ¶32).
- [The Student] continues to struggle and is still not making meaningful progress.  [The Student], for instance, continues to struggle with expressive speech and does not engage in meaningful play with his peers.  I have also not observed improvement in [the Student's]'s academic skills or his fine motor skills.  [The Student] also continues to demonstrate significant problems with self-regulation and hyperactivity (*Id.* at ¶33).
- The DOE held an IEP meeting on November 1, 2021.  I attended this meeting, and Dr. Oratio attended the meeting by telephone.  During the meeting, Dr. Oratio reiterated the findings and recommendations in her report, including the need for [the Student] to be placed in a full-time ABA program during the school day and to additionally receive at-home ABA services (*Id.* at ¶34).
- Unfortunately, the DOE ignored Dr. Oratio's findings and recommendations and did not appear to seriously consider alternative placements or programs for [the Student].  The DOE recommended the same 6:1:1 District 75 program that he was failing to progress in at the time of the November 1, 2021 IEP meeting—as well as the same inadequate related services program that [the Student] has been mandated to receive—and failed to make meaningful progress in—since he first entered preschool. As such, I disagreed with the November 1, 2021 IEP (*Id.* at ¶35).

The District was required under the due process procedures set forth in New York State law to address the issue by describing its views, based on a fact-specific inquiry set forth in an evidentiary record, regarding an appropriate compensatory education remedy that would most reasonably and efficiently place the student in the position that he would have been but for the denial of a FAPE (*Educ. Law § 4404(1)(c);* see *M.M. v. New York City Dep't of Educ.,* 2017 WL 1194685, at *4 (S.D.N.Y. 2017) (noting the SRO's finding that the District had the burden of proof on the issue of compensatory education); see also *Doe v. East Lime Board of Educ*, 790 F.3d 440, 457 (2d Cir. 2015); *Reid ex rel. Reid v. District of Columbia*, 401 F.3d, 516, 524 (D.C.D.C. 2005). Where, as here, New York State law has placed the burden of production and persuasion at an impartial hearing on the District, it is not the IHO's responsibility to craft the District's position regarding the appropriate compensatory education remedy. However, as aforementioned, at no point during the hearing did the District offer any evidence to the contrary regarding the number of the compensatory services being requested, or challenge the Parent's authority to select the providers for these services.

Moreover, since the denial of FAPE was more than *de minimis,* the Student is entitled to Compensatory services consisting of appropriate ABA instruction and Supervision, which are "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *E. Lyme Bd. of Educ.,* 790 F.3d 440, 457 (2d Cir. 2015) (quoting *Reid*, 401 F.3d at 524). The question remains however as to whether or not the number of hours recommended by Dr. Oratio for both of these services are appropriate. As aforementioned Dr. Oratio's recommendation is based in part on her

conclusion that the Student has not received an ABA program from preschool to date. In this

regard, when questioned on cross-examination whether or not Dr. Oratio  knew if the Student was

receiving ABA services in preschool, Dr. Oratio testified:

> DR. ORATIO: I do not believe that he was receiving the type of
> programming that I was just speaking about. So I don't believe that
> he was receiving any appropriate ABA.
> MS. DORSAINT: And that belief is based on what you reviewed
> and not with any conversation you've had with anyone at the
> schools?
> DR. ORATIO: Correct. And to my knowledge, based on the -- the
> DOE programs that he's been in, there is not that type of ABA that
> is within that -- the -- the program.
> MS. DORSAINT: Would it have been helpful to reach out to prior
> teachers and related service providers in order to determine what the
> student had received in the past?
> DR. ORATIO: I mean, again, based on what I had read, and based
> on the IEPs, and the programs that were listed on those IEPs, it -- it
> would not have changed my -- my recommendation. And also based
> on how he was functioning with regard to the neuropsych evaluation
> and how that compared, also, to his previous evaluation. So I don't
> think that it would have been, you know, making any significant
> difference whatsoever.

(Tr. 85-86).

Dr. Oratio testified that her records review consisted in part of the Student's IEPs for the

2017/2018 through 2021/2022 school year, from which she ascertained that he was not in an ABA

classroom, and opined that this caused the Student to not make meaningful progress since

preschool (Parent Ex. "L" at ¶¶6, 11, 12). Dr. Oratio's testimony explained that her

recommendation for 9,135 hours of ABA and 1,827 hours of BCBA Supervision was based upon

her conclusion that the Student should have received thirty (30) hours per week of ABA instruction

and six (6) hours per week of BCBA Supervision, along with fifteen (15) hours per week at home

of ABA Instruction and three (3) hours per week of BCBA Supervision for forty-six (46) weeks

per year since the Student was in preschool, during the 2017/2018 school year (*Id.* at 15(a)).

However, a school year consists of one hundred and eighty (180) days, or thirty-six (36) weeks,

plus six (6) additional weeks for the extended school year, (because this is a twelve-month Student)

for a total of forty-two (42) weeks per year, not forty-six (46) weeks (*N.Y. Educ. Law §4408(1)*[8]).

42 weeks x 4 school years = 168  + nineteen (19) weeks for the current school year = 187 weeks

x 45 hours per week (30 hours + 15 hours) = 8,415 hours instead of 9,135. Nonetheless, since this

IHO has concluded and is ordering that the Student be placed in a 12-month ABA program, and

receive the fifteen (15) hours per week of ABA Instruction, which leaves little if any time during

the week to receive these compensatory services. Moreover Dr. Oratio has recommended that

pursuant to the Student's program at home and in school, he receive per week, a total of forty-five

(45), and not more hours of ABA Instruction, and nine (9), and not more hours of BCBA

Supervision.

---

[8] N.Y. Educ. Law 4408(1) provides:

> State aid.   The commissioner shall make payments for approved July and August
> programs for students with disabilities in accordance with this section in an
> amount equal to eighty percent of the sum of the approved tuition and
> maintenance rates and the transportation expense for the current year enrollment
> of students with disabilities ages five through twenty-one or students eligible for
> services during July and August pursuant to article eighty-five, eighty-seven or
> eighty-eight of this chapter, 1 where such costs are determined pursuant
> to <u>section forty-four hundred five</u> of this article, provided that the placement of
> such students was approved by the commissioner, if required.   **Such programs
> shall operate for six weeks and shall be funded for thirty days of service**,
> provided, however, that the observance of the legal holiday for Independence day
> may constitute a day of service.   Upon certification by the school district in which
> the student resides, that such services were provided, such payment shall be made
> to the provider of such services, in accordance with the provisions of subdivision
> three of this section.

(Emphasis added).

Thus, assuming the Student receives five (5) hours per day of ABA Instruction on Saturday and Sunday for the fifty-two (52) weeks of the year (10 x 52 = 520 hours), and forty-five (45) more hours per week, for the ten (10) weeks school is not in session (totaling 450 hours) e.g., period before and after the extended school year program and during breaks, it appears that at most the Student would be able to use of these compensatory services would be nine hundred and seventy (970) hours (520+450).  Thus it would take approximately 8.7 years for the Student to be provided with all of these compensatory services (8,415 divided by 970).

In addition, since the number of recommended ABA hours (9,135) are five (5) times more than the recommended BCBA hours (1827) and 8,415 divided by 5 = 1,683 hours; this is the number of BCBA supervisory hours that could have been provided to the Student over this four (4) year plus nineteen (19) week period, using forty-two instead of forty-six weeks for an extended school year (see:*infra*).

At least one court has noted that ABA services may have, diminishing value for the student (*M.M. v. New York City Dep't of Educ.,* 2017 WL 1194685, at *8 (S.D.N.Y. 2017) ("services that may be valuable for, or even critical to, a child's educational achievement when provided in small to moderate amounts may become close to useless, or even burdensome, if provided in overwhelming quantity")). In rendering a determination as to an appropriate award, it is important for this IHO to consider the purpose of compensatory education, e.g., not to punish the district (see *C.W. v Rose Tree Media Sch. Dist.,* 395 Fed. App'x 824, 828 (3d Cir. 2010) (noting that "[t]he purpose of compensatory education is not to punish school districts for failing to follow the established procedures for providing a [FAPE], but to compensate students with disabilities who

have not received an appropriate education.")). In addition, the purpose of any award of compensatory educational services is not to maximize the student's potential or to guarantee that the student, achieve a certain level e.g., grade level, but rather, such services "must be reasonably calculated to provide the educational benefits that would have accrued from the special education services the school district should have supplied in the first place" (see:*infra*).

Dr. Oratio's testimony directly explains how her recommendations address the purpose of compensatory services (see T. at pages 84-85 quoted above). Nonetheless, 8,415 hours of ABA Instruction and 1,683 hours of BCBA Supervision are a considerably, large, number of hours, which as aforementioned will take approximately 8.7 years to provide. Moreover, the award of these compensatory services cannot be in a vacuum. In addition to these compensatory services this IHO is, ordering and the Student will be receiving a program consisting of thirty (30) hours ABA Instruction per week, along with six (6) hours of BCBA Supervision per week, and fifteen (15) hours of ABA Instruction at home along with three (3) hours of BCBA Supervision at home; total forty-five (45) p years, assuming the school year is forty-two weeks, the Student will receive (45x42x3) 5,670 hours of ABA Instruction and (9x42x3) 1,134 hours of BCBA Supervision over a three (3) year period.  Thus, to award the Student the total number of hours of requested compensatory ABA Instruction would be in a sense double dipping, and awarding him more than the deprivation he suffered as a result of not receiving these services.

Accordingly, in terms of ABA Instruction, taking $8,415 - 5,670 = 2,745$ hours. If the Parent supplements the program over this three (3) year period by providing up to (4) hours per day on Saturday and Sunday or eight (8) additional hours per week, for fifty-two (52) weeks per year for

three (3) years that equals 1,248 (8x52x3) hours of ABA Instruction. Next assuming the Parent

provides the Student with forty-five (45) hours per week for the ten (10) weeks that are not covered

by the forty (42) weeks of services, for three (3) years that equals 1,350 (45x10x3).  5,670 + 1,248

+ 1,350 = 8,268 hours. The additional  one hundred and forty-seven (147) hours (which is

computed by subtracting 8268 from 8,415), can be used during the week, on the weekends or

during time off from school. Accordingly, 2,745 (8,415-5,670) hours of ABA Instruction, which

excludes the Student's ABA program, over a three (3) year period, is a reasonable amount to

provide to this Student over a three (3) year period.

 In terms of BCBA Supervision, using the ratio of one (1) hour of BCBA Supervision for

every five (5) hours of ABA Instruction, 8,268/5 = approximately 1,653 hours of BCBA

Supervision[9]. The thirty (30) remaining hours of BCBA Supervision (1683-1653) can be used by

the Parent during the week, over the weekends or during time off from school. Accordingly, 549

(1,683-1,134)  hours of compensatory BCBA Supervision, which excludes the nine (9) hours per

week the Student will be receiving both in his program at home and at school) over a three (3) year

period, is a reasonable amount to provide to this Student. Nevertheless, this IHO is not limiting

the time in which the Parent must use the Compensatory Services comprised of ABA Instruction

and BCBA Supervision.

 This IHO is mindful that at some point the delivery of compensatory educational services,

once awarded, may result in the student being overwhelmed, or in having an adverse impact on

---

[9] As aforementioned, this number takes into account the number of hours the Student will receive in his school program, home program, and assuming the Parent will supplement the program, over the weekends and when the Student is off from school.

the student's current special education program and services. However, since nothing was presented to the contrary, this IHO can only hope that the providers will be cognizant of the Student's needs and not overwhelm him when delivering these compensatory services.

Based upon Dr. Oratio's explanation of the basis for her recommendation, and the probable outcome for the Student as a result of receiving these services, which this IHO finds to be credible, and this IHO's computation above, the Student is entitled to compensatory services consisting of 2,745 hours of ABA and 549 hours of BCBA Supervision.

Finally, due to the fact that the providers of the Student's compensatory ABA Instruction and BCBA Supervision should be the same as those providing the above-ordered fifteen (15) hours per week of at home ABA Instruction and three (3) hours of at home BCBA Supervision, the District shall fund both these compensatory and at home services, which shall be provided by appropriately qualified and licensed professionals, at the market rate[10].

### 3. Speech Language Services:

In addition to the Parent's testimony above, in Dr. Oratio concluded in relevant part:

> [The Student] should have received speech-language therapy in the amount of five sessions per week since he first entered preschool (i.e., the 2017-2018 school year). [The Student], however, was mandated to receive only three thirty-minute sessions per week since he entered preschool. As such, I believe that [the Student] should be provided at least one hour of compensatory speech-language therapy (i.e., two thirty-minute sessions per week) for each week in which he has received the inappropriate mandate of three thirty-minute sessions per week. Taking into account the 46-week school years from 2017-2018 to 2020-2021 and the 19 weeks that have elapsed during the 12-month 2021-2022 school year, [the Student] should receive a minimum of 203 hours of compensatory speech-therapy. Notably, this is a very conservative

---

[10] This IHO notes that Ms. Chang testified that $250 per hour for the ABA Instruction and $300 per hour for the BCBA Supervision is within the normal market rate for New York City (Parent Ex. "M" at ¶11).

recommendation—particularly in light of the fact that it is not clear whether [the Student] actually even received his mandated speech-language therapy sessions during the school years at issue.

(Parent Ex. "L" at ¶15(b)).

Accordingly, the denial of FAPE was more than *de minimis,* and the Student is entitled to the Compensatory services consisting of the one (1) session he should have received since the 2017/2018 school year, which as aforementioned is one-hundred and eighty-seven (187) weeks, which equals 187 hours of compensatory speech language therapy. The reduction in the total number of compensatory services is due to the extended school year consisting of forty-two (42) and not forty-six (46) weeks, as more fully explained herein.

Moreover, the analysis used above to determine the number of compensatory ABA Instruction and BCBA Supervision hours is applicable to the determination of compensatory speech language services for the Student. As ordered herein, the Student will be receiving two (2) additional thirty (30) minute sessions of speech language services per week. Thus, over three (3) years, the Student will receive 42 (weeks) x 1 (hour) x 3 (years) = 126. Taking 187-126 = 61 hours of compensatory speech language therapy, which services are "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *E. Lyme Board of Educ.,* 790 F.3d 440, 457 (2d Cir. 2015) (quoting *Reid*, 401 F.3d at 524).

Finally, based upon Dr. Oratio's statement, it is unclear whether or not the Student received his mandated speech language therapy sessions over the past five (5) school years, including the current school year. Accordingly, an audit should be conducted by the DOE within thirty (30) days

of this Decision, to ascertain what if any services the Student did not receive from the 2017/2018

school year to date, and such amount should be added to the number of compensatory services

being ordered below.

## 4. Occupational Therapy and Physical Therapy:

In addition to the Parent's testimony above, Dr. Oratio also testified as follows regarding

these requested compensatory services:

> Finally, [the Student] should have received three thirty-minute
> sessions per week of occupational therapy and physical therapy
> since he entered preschool.  Instead, [the Student] was mandated
> to receive two thirty-minute sessions per week of occupational
> therapy and physical therapy. I also understand that [the Student]
> did not receive occupational therapy or physical therapy from
> the start of the COVID-19 pandemic in March 2020 through the
> end of the 2020-2021 school year. I believe that [the Student]
> should receive compensatory services, at a minimum, in an
> amount equal to an additional thirty minutes of occupational
> therapy and physical therapy for each week during his
> educational career for which he was mandated to receive the
> inappropriate mandates of two thirty minutes sessions per week
> of occupational therapy and physical therapy. [The Student] also
> should be compensated for the sessions that he missed during
> the 2019-2020 and 2020-2021 school years. In total, this
> amounts to 161.5 hours of occupational therapy and 161.5 hours
> of physical therapy to date. Again, this is also a very
> conservative recommendation given that it assumes [the
> Student] actually did receive all of his mandated occupational
> therapy and physical therapy sessions prior to March 2020 and
> again during the first 19 weeks of the current 2021-2022 school
> year.

(*Id.* ¶15(c)).

Corrected Findings of Fact and Decision                                                     39
Case No. 211664

Accordingly, the denial of FAPE was more than *de minimis,* and the Student is entitled to

Compensatory services, consisting of one hundred and eighty seven (187) thirty minute sessions[11]

of compensatory services for occupational therapy and physical therapy.

Moreover, the analysis used above to determine the number of compensatory ABA

Instruction, BCBA Supervision, and speech language services, is applicable to the determination

of compensatory occupational therapy and physical therapy services for the Student. As ordered

herein, the Student will be receiving one (1) additional thirty (30) minute session of occupational

therapy and physical therapy per week. Thus, over three (3) years, the Student will receive an

additional 126, thirty (30) minute sessions of occupational therapy and physical therapy (42

(weeks) x 3 (years) = 126). Taking 187-126 = 61 thirty (30) minute sessions of compensatory

occupational therapy and physical therapy, which are "reasonably calculated to provide the

educational benefits that likely would have accrued from special education services the school

district should have supplied in the first place." *E. Lyme Board of Educ.,* 790 F.3d 440, 457 (2d

Cir. 2015) (quoting *Reid*, 401 F.3d at 524). Notably, part of the reduction in the total number of

compensatory services is due to the extended school year consisting of forty-two (42) and not

forty-six (46) weeks, as more fully explained herein.

Finally, based upon Dr. Oratio's statement it is unclear what if any of these mandated

services the Student received over the past five (5) school years. However, based upon the Parent's

testimony, it is clear that the Student did not receive any of these services from the onset of the

Pandemic during the 2019/2020 school year and for the entire 2020/2021 school year (Parent Ex.

---

[11] 187 weeks x one additional thirty minute session = 187 thirty minute sessions.

"K" at ¶¶4,5). Accordingly, an audit shall be conducted by the DOE, within thirty (30) days of this Decision, to ascertain what if any of these services the Student did not receive from the 2017/2018 school year to date, and such amount should be added to the number of compensatory services being ordered below. In the event that such audit is not performed with thirty (30) days of this decision, it shall be assumed that the Student did not receive his mandated services for the forty-two (42) week extended 2019/2020 school year plus nineteen (19) weeks during the 2021/2022 school year, which equals sixty-one (61) weeks x one (1) hour = and sixty-one (61) hours, that will be added for each of the compensatory occupational therapy and physical therapy services ordered herein.

**ORDER**

**IT IS HEREBY ORDERED** the District shall provide the Student with a twelve-month intensive behavior analytic, full time program, which follows ABA principals, where he will receive 1:1 instruction, with one (1) hour of BCBA Supervision for every five (5) hours that the Student is in the classroom; and

**IT IS FURTHER ORDERED** that in the event the DOE determines that such program is only available in a nonpublic school that, a deferral shall be made to the CBST to make such recommendation; and

**IT IS FURTHER ORERED** the District shall provide thirty (30) hours per week of 1:1 ABA Instruction to the Student on a push-in basis, into the Student's classroom along with six (6) hours of BCBA Supervision, until such time as the above-ordered placement in the twelve-month intensive behavior analytic program is provided to the Student; and

**IT IS FURTHER ORDERED** that the District shall fund, fifteen (15) hours per week of 1:1 ABA instruction at home, which shall be provided by an appropriately qualified and licensed professional, at the market rate; and

**IT IS FURTHER ORDERED** that the District shall fund three (3) hours per week of BCBA Supervision of the 1:1 ABA instruction at home, ordered above, which shall be provided bay an appropriately qualified and licensed professional at the market rate; and

**IT IS FURTHER ORDERED** that the Student's IEP shall be revised so that his mandated parent counseling and training, is one (1) hour per month; and

**IT IS FURTHER ORDERED** that the Student's IEP shall be revised so that his mandated speech services consist of five (5) thirty (30) minute sessions of speech language therapy per week; and

**IT IS FURTHER ORDERED** that the Student's IEP shall be revised so that his mandated occupational therapy services consist of three (3) thirty (30) minute sessions of occupational therapy per week; and

**IT IS FURTHER ORDERED** that the Student's IEP shall be revised so that his mandated physical therapy services consist of three (3) thirty (30) minute sessions of physical therapy per week; and

**IT IS FURTHER ORDERED** that the District shall conduct an assistive technology evaluation of the Student, and in the event that such evaluation is not conducted within thirty (30) days of this Decision, this evaluation shall be conducted by a properly qualified individual of the Parent's choosing, at the market rate; and

**IT IS FURTHER ORDERED** that the District shall provide the Student and the Parent with appropriate round-trip special transportation between the Student's home and the Student's nonpublic school placement recommended by the CBST, or program the Student is attending where he is receiving the thirty (30) hours of ABA Instruction and six (6) hours of BCBA Supervision; with such transportation provided from the Student's home at the closest safe curb location to such program; and

**IT IS FURTHER ORDERED** that the District shall fund the following compensatory services for the Student, to be provided by a qualified professional of the Parent's choosing, at the market rate:

1. Two Thousand Seven Hundred and Forty-Five (2,745) hours of ABA instruction;
2. Five Hundred and Forty-Nine (549) hours of BCBA supervision;
3. Sixty-one (61) hours of speech language therapy;
4. Sixty-One (61) thirty (30) minute sessions of occupational therapy;
5. Sixty-one (61) thirty (30) minute sessions of physical therapy; and

**IT IS FURTHER ORDERED** that the DOE shall conduct an audit to ascertain what if any speech language, occupational therapy, and physical therapy services the Student did not receive from the 2017/2018 school year to date, and that such amount shall be added to the number of compensatory services being ordered above; and

**IT IS FURTHER ORDERED** that if such audit is not conducted within thirty (30) days of this Decision, in addition to the Compensatory Services set forth above, the District shall provide one hundred and twenty two (122) thirty (30) minute sessions (or sixty-one (61) hours),

Corrected Findings of Fact and Decision                                         43
Case No. 211664

each of compensatory occupational therapy and physical therapy services to the Student.

January 29, 2022

*Randy Glasser, Esq.*
RANDY GLASSER, ESQ.
Impartial Hearing Officer

Corrected Findings of Fact and Decision                                         44
Case No. 211664
_____

### NAMES AND TITLES OF APPEARANCES ON DECEMBER 14, 2021

**DOE**

Geraldine Dorsaint, District Representative

**Parent**

Justin B. Shane, Esq., of The Law Office of Steven J. Alizio, Parent's Attorney
███████████, Parent
Hanna Chang, M.S.ED., BCBA, LBA
Jennifer Oratio, PH.D.

### DOCUMENTS ENTERED INTO THE RECORD

**Parent Exhibits**

A. Processed Impartial Hearing Request with Cover Letter , 08/16/2021, 16 pages
B. Parent's Email Request for an IEE, 3/23/2020, 3 pages
C. Impartial Hearing Request for IEE, 4/14/2020, 3 pages
D. Findings of Fact and Decision, IHO Helen Peyser, Esq.,10/6/2020, 6 pages
E. Neuropsychological Evaluation – Dr. Jennifer L. Oratio, PSY.D., 1/12/2021, 15 pages
F. Email Thread re: IEP Meeting, 2/22/2021-2/23/2021, 2 pages
G. Parent's email to the CSE re: IEP, 3/1/2021, 3 pages
H. Email Communication to CSE re: Neuropsychological Evaluation, 3/3/2021, 1 page
I. Dr. Jennifer L. Oratio's C.V., undated, 10 pages
J. Hanna Chang's C.V., undated, 2 pages
K. Affidavit of Testimony of ███████████, 12/13/2021, 6 pages
L. Affidavit of Testimony of Dr. Jennifer Oratio, 12/13/2021, 6 pages
M. Affidavit of Testimony of Hanna Chang, 12/13/2021, 4 pages

**Department of Education Exhibits**

1.  IEP, 11/11/21, 34 pages

**IHO Exhibits**

I.  Closing Brief and Memorandum of Law for Petitioner, undated, 28 pages
II. Email, 1/18/22, 1 page
III. Order of Extension, 12/13/21, 1 page

Findings of Fact and Decision                                                                                      45
Case No. 211664

---

### *NOTICE OF RIGHT TO APPEAL*

*Within 40 days of the date of this decision, the parent and/or the Public School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.*

*If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.*

*An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.*

**L.V. v. NYC Department of Education, 03 Civ. 9917 (SDNY)**

Parents of children with Individualized Education Programs who received or who may receive an order at the conclusion of an impartial hearing should read the attached notice about possible disclosure of information and documents about their children as part of a federal court litigation.

Translations in Spanish, Arabic, Bengali, Chinese, French, Haitian Creole, Korean, Russian, and Urdu are available on the DOE webpage at https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings

**Notice of Potential Disclosure of Student Education Records**

**Please read this notice carefully**. This is a message about possible disclosure of documents or data that might contain information about your child, if your child has been classified as a student with a disability and has been or may be the subject of a final Impartial Hearing Order.

**I.      Nature of the Lawsuit**

This lawsuit challenged the failure of the Department of Education ("DOE") of the City of New York to timely implement orders issued by impartial hearing officers in connection with impartial hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. and N.Y. Education Law § 4401, *et seq.* In 2007, the parties entered into a Stipulation of Settlement (the "Stipulation") in which the DOE agreed to timely implement these orders.

In January 2021, the Court granted plaintiffs' motion for the appointment of a special master. On April 14, 2021, the Court entered an Order appointing David Irwin of Thru-Ed as the Special Master.  On May 14, 2021, the Court entered an Order detailing the duties and authority of the Special Master which include, among other things, the authority to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders a. Pursuant to this Order, the Special Master may have access to education records of students, upon DOE's compliance with the Family Education Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. Part 99) ("FERPA").

## II.     Data Ordered to Be Disclosed

In order for the Special Master to perform his duties, the Court has directed the DOE to provide the Special Master (and employees and consultants at Thru-Ed) with access to records containing confidential student record information, including, but not limited to, documents submitted in the impartial hearing process, impartial hearing orders, data about compliance, and students' special education documents, such as individualized education programs, evaluations, authorizations, invoices, etc. The Special Master is required to keep any student documents and information confidential. No student-specific information will be shared with plaintiffs' counsel unless the student's parent specifically consents. If there is any student-specific information in the Special Master's reports to the Court, that information would not be made public.

The Special Master will use this information only for his work to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders.  The disclosure of this information does not affect any of your rights as a parent to seek special education services for your child.

## IV.     Objections to Disclosure

If you agree to the disclosure of this information to the Special Master, you do not need to do anything more.

If you do not want your child's information shared with the Special Master, you must object to this disclosure by submitting an objection to DOE's attorney, addressed to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York  NY  10007

or via email at LVObjection@law.nyc.gov.  Please reference the *LV v. DOE* lawsuit (Case No. 03-9917) when writing.  An Objection Form accompanies this Notice, though no written objection will be rejected if it is not submitted on this form.  If you object, no records containing you and your child's personally identifiable information or other FERPA-protected information will be provided to the Special Master, although nominal and incidental disclosure of your child's name may occur.  **Any objections must be received by December 3, 2021 or for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order**.

**If you would like more information about this notice, please contact the attorneys for plaintiffs**, **Rebecca Shore, of Advocates for Children of New York, Inc. at 646-532-6078.**

**OBJECTION TO DISCLOSURE OF RECORDS**
**LV v. DOE, 03 Civ. 9917 (SDNY)**


If you agree to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, you do not need to complete this form.

If you object to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, please compete and return this form to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York, NY  10007

or via email at LVObjection@law.nyc.gov

Child's name: _____

Name: _____

Address: _____

Impartial Hearing Order Case # (if known): _____

Date of Order (if known): _____

> If you object to the release of your confidential information, please check the line below:
>
> _____   I do not agree to have my confidential records disclosed to the Special Master in *L.V. v. DOE*.


_____          _____
Date                                                    Please sign here

If you object to the release of information, your objection must be received by December 3, 2021 or, for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order.

     \*   \*   \*   If you do not notify the DOE of your objections to the documents being released, you child's information will be provided to the Special Master appointed in *LV v. DOE*, 99 Civ. 9917 (SDNY) and/or consultants and employees of Thru-Ed.  The information will remain confidential and the disclosure of this information will not affect any of your rights to seek special education services for your child.

| |
|---|
| للاطلاع على هذا المستند باللغة العربية، قُم بزيارة الموقع الإلكتروني https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| YgÄs Ä̀x Ä̀t  Ä̀x̀ x̀ ná^l  á̀ https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings  ná^p̂ |
| 若要以中文查看，請上網到 https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pour consulter ce texte en français, allez sur https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pou wè tèks sa a an kreyòl ayisyen, ale sou  https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| 본 문서를 한국어로 보시려면 다음 웹사이트를 이용하십시오: https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Для просмотра документа на русском языке посетите https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Para ver este contenido en español, visite  https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| اس کو اردو میں دیکھنے کے لیے  https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings  پر جائں |